UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
ROCHESTER DIVISION

| | |
|---|---|
| Noah Nelson, individually and on behalf of all others similarly situated, | 6:22-cv-06175 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Gskill USA, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Gskill USA, Inc. ("Defendant") manufactures, labels, markets, and sells RAM products which provide high-speed computer memory, such as its Ripjaws V DDR4-3600 MHz, to users who want to improve their computer's performance in games or other uses ("Product").

2. The representations of Defendant and third-parties acting on its behalf describe the Product as having "Blazing Fast Transfer Speed," which "lets you enjoy a faster computing experience for gaming, video & image editing, rendering, and data processing."



Blazing Fast Transfer Speed
Available in a wide range of frequency options from standard DDR4-2133MHz to a blistering DDR4-4000MHz in dual channels, Ripjaws V lets you enjoy a faster computing experience for gaming, video & image editing, rendering, and data processing.

3. Memory speed refers to the speed of computers in terms of megahertz ("MHz").

4. RAM with greater MHz will have faster memory and perform at higher levels.

5. The Product can be plugged into the memory slots of a computer.

6. On Amazon.com and Newegg, versions of the RipJaws V are advertised with speeds of "3600 MHz" and "4000 MHz."



7. These representations are made by Defendant and at its directions, including in stores and on websites of third-parties.

8. However, the Product cannot reach these speeds unless the computer's firmware is modified through "overclocking," which theoretically optimizes the system's performance.

9. Overclocking memory requires adjusting the computer's Basic Input/Output System ("BIOS") or Unified Extensible Firmware Interface ("UEFI") settings.

10. These settings control how a computer operates and can only be accessed through specialized keyboard controls.

11. The user must then locate settings for RAM frequency (its MHz speed), increase it to the target speed, i.e., 4000 MHz, and change multiple memory "timing" settings, which interact with the frequency settings.

12. The advertised speeds are not always reached, due to issues beyond the user's control or knowledge, such as the combination of other computer components, including the processors and motherboard.

13. To operate RAM at higher speeds requires additional power, which can increase the voltage settings.

14. The result is that stability of the system is compromised, causing crashes or glitches, overheated system components, faster degradation of critical components, and damage to the memory sticks themselves.

15. The marketing of the Product at the identified speeds is consistent across third-party channels and in Defendant's representations, in print, digital, audio and/or other formats.

16. Consumers purchasing the Product will expect the advertised speeds "out-of-the-box."

17. This expectation is reasonable because when consumers buy memory as part of a computer purchase from a company like HP, Dell, or Apple, the memory will function at the indicated speed.

18. Defendant failed to inform purchasers that the advertised speeds are not attainable without the modifications described, which may result in the other issues identified.

19. Defendant markets its products with lifetime warranties, which consumers understand to mean if there is an issue with a product they buy, Defendant will fix or replace it, for the duration of the product's use.

20. However, Defendant fails to honor the lifetime warranties by not replacing or repairing products which are non-functional.

21. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

22. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

23. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

24. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

25. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

26. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $129, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

27. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

28. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

29. Plaintiff Noah Nelson is a citizen of New York.

30. Defendant Gskill USA, Inc. is a California corporation with a principal place of business in Walnut, Los Angeles County, California.

31. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

32. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

33. The Product is available to consumers from third-parties, which includes stores and websites that sell computer parts and accessories.

34. Venue is in the Rochester Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Monroe County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

## Parties

35. Plaintiff Noah Nelson is a citizen of Rochester, Monroe, New York.

36. Defendant Gskill USA, Inc. is a California corporation with a principal place of business in Walnut, California, Los Angeles County.

37. Defendant is a subsidiary of G.Skill International Enterprise Co., Ltd. ("G.Skill International"), a Taiwanese computer hardware manufacturing company.

38. G.Skill International specializes in high-end PC products and is best known for its DRAM products.

39. Consumers trust the G.Skill brand, because of its expertise and demonstrated record of quality, innovation and reliability.

40. Consumers trust G.Skill to be honest with them, because it has built up a reservoir of good will based on its practices and history.

41. The Product is available to consumers from third-parties, which includes stores and websites that sell computer parts and accessories.

42. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Micro Center, www.microcenter.com, between April 3, 2020, and April 3, 2021, and/or among other times.

43. Plaintiff believed and expected the Product reached the speeds indicated, without other modifications, and without the risk of system failure or instability because that is what the representations and omissions said and implied.

44. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

45. Plaintiff bought the Product at or exceeding the above-referenced price.

46. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

47. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

48. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

49. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

50. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar RAM products which provide high-speed computer memory, because he is unsure whether those representations are truthful.

## Class Allegations

51. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Iowa, Wyoming, Texas, Nebraska, South Dakota, West Virginia, Utah, Idaho, Alaska, and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

52. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

53. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

54. Plaintiff is an adequate representative because his interests do not conflict with other members.

55. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

56. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

57. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

58. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

59. Plaintiff incorporates by reference all preceding paragraphs.

60. Plaintiff believed the Product reached the speeds indicated, without other modifications, and without the risk of system failure or instability.

61. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

62. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

63. Plaintiff relied on the representations and omissions to believe the Product reached the speeds indicated, without other modifications, and without the risk of system failure or instability.

64. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

65. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

66. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

67. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

68. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

69. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

70. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it reached the speeds indicated, without other modifications, and without the risk of system failure or instability.

71. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

72. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

73. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it reached the speeds indicated, without other modifications, and without the risk of system failure or instability.

74. Defendant's representations affirmed and promised that the Product reached the speeds indicated, without other modifications, and without the risk of system failure or instability.

75. Defendant described the Product so Plaintiff and consumers believed it reached the speeds indicated, without other modifications, and without the risk of system failure or instability, which became part of the basis of the bargain that it would conform to its affirmations and promises.

76. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

77. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted brand known for the highest quality products.

78. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

79. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

80. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

81. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

82. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

83. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it reached the speeds indicated, without other modifications, and without the risk of system failure or instability.

84. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it reached the speeds indicated, without other modifications, and without the risk of system failure or instability, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

85. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

86. Defendant had a duty to truthfully represent the Product, which it breached.

87. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for the highest quality products.

88. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

89. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

90. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

91. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

92. Plaintiff and class members would not have purchased the Product or paid as much

...

if the true facts had been known, suffering damages.

### Fraud

93. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it reached the speeds indicated, without other modifications, and without the risk of system failure or instability.

94. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

95. Defendant knew of the issues described here yet did not address them.

96. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

97. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   April 17, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

James Chung*

*Pro Hac Vice Application Forthcoming