UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NOAH NELSON, individually and on behalf of all others
similarly situated,

|  |  |
|---|---|
| Plaintiff, | Case # 22-CV-6175-FPG |
| v. | DECISION AND ORDER |
| G.SKILL USA, INC., |  |
| Defendant. |  |

## INTRODUCTION

Defendant G.Skill USA, Inc. ("G.Skill") has moved to stay this putative class action pending resolution of a parallel putative class action in the Central District of California, *Tristan Hurd v. G. Skill International Enterprise Co., LTD. et al.*, No. 22-CV-00685. ECF No. 9 at 1. Plaintiff Noah Nelson ("Nelson") opposes the motion. ECF No. 11. For the reasons that follow, G.Skill's motion is GRANTED and the action is stayed pending further order of the Court.

## BACKGROUND

### I.   The *Hurd* Action

On January 31, 2022, plaintiffs Tristan Hurd ("Hurd") and Ken Dimicco ("Dimicco") (together, the "*Hurd* Plaintiffs") filed a putative class action complaint in the Central District of California against G.Skill, G.Skill International Enterprise Co., LTD, Racerspeed, Inc., and Neuteck, Inc. (the "*Hurd* Defendants"). ECF No. 9-1 at 22. The *Hurd* Plaintiffs allege that G.Skill advertises that its high-speed computer memory products, including its Trident, Aegis, and Ripjaws lines, will run at the advertised speeds, measured in megahertz ("MHz"), "out-of-the-box." *Id.* at 41. They further allege that memory advertised as running at, for example, 3,800 MHz, runs at only 2,133 MHz unless the user engages in a process known as "overclocking." *Id.*  at 42-

43. However, overclocking poses "material risk to the functionality of the computer system, as well as to the memory sticks themselves" and may "void warranties on important components," such as the computer's processor. *Id.* at 43-44. Accordingly, the *Hurd* Plaintiffs allege that the *Hurd* Defendants' advertisements are misleading to reasonable consumers. *Id.* at 46.

The *Hurd* Plaintiffs, Hurd and Dimicco, are residents of California and New York, respectively. *Id.* at 34. They bring their claims under the consumer protection laws of California and several other states, including New York General Business Law §§ 349 and 350. *Id.* at 52-54, 61-62. They also seek relief for breach of express warranty and negligent misrepresentation. ECF No. 9-1 at 63-65. G.Skill filed an Answer to the *Hurd* Plaintiffs' First Amended Complaint on November 21, 2022. ECF No. 12-1 at 1. On October 26, 2022, the *Hurd* court set discovery deadlines and a briefing schedule for class certification. *Id.* at 70. The parties are to complete class certification discovery by May 5, 2023. *Id.* The *Hurd* Plaintiffs' motion for class certification is due June 2, 2023, and a class certification hearing is scheduled for August 11, 2023. *Id.* at 70-71. The *Hurd* court has stayed merits discovery, permitting only class certification discovery until further order of the court. *Id.* at 71.

**II. The *Nelson* Action**

On April 17, 2022, almost three months after the *Hurd* Plaintiffs filed their complaint, Nelson filed this putative class action in this Court against G.Skill on behalf of a "New York Class" and a "Consumer Fraud Multi-State Class" who purchased G.Skill's computer memory products. ECF No. 1 ¶¶ 25, 51. Like the *Hurd* Plaintiffs, Nelson alleges that, while G.Skill advertises the memory as being capable of achieving speeds of 3,600 MHz to 4,000 MHz out-of-the-box, in reality, it can only reach such speeds if the users engage in overclocking. *Id.* ¶¶ 6-13. But doing

2

so, Nelson alleges, may compromise the stability of the user's computer system and cause faster

degradation of critical system components, along with damage to the memory itself. *Id.* ¶ 14.

Nelson brings his action under multiple state consumer protection laws, including New

York General Business Law §§ 349 and 350. *Id.* ¶¶ 59-64, 65-69. He also seeks relief for breach

of express warranty and for negligent misrepresentation. *Id.* ¶¶ 70, 86-92. In addition to those

claims, Nelson also brings claims for breach of the implied warranties of merchantability and

fitness for a particular purpose, fraud, and unjust enrichment. *Id.* ¶¶ 70, 80-84, 93-96, 97. Nelson,

like *Hurd* plaintiff Dimicco, is a resident of New York. *Id.* at 35. In accordance with a joint

stipulation, G.Skill has not yet answered Nelson's complaint. ECF No. 8.

## DISCUSSION

G.Skill argues that a stay is warranted because the *Hurd* action was filed before the *Nelson*

action and the two actions involve substantially the same issues. It further asserts that a stay will

will serve its interests, as well as those of the courts, non-parties, and the public, while not

prejudicing Nelson. Nelson responds by arguing that the *Hurd* court may not be able to exercise

personal jurisdiction over G.Skill for the New York plaintiffs' claims, that G.Skill has not shown

a clear case of hardship, and that the *Hurd* action is not more advanced than the *Nelson* action. For

the reasons that follow, the Court concludes that a stay is warranted.

### I.   The First-Filed Rule

"A district court's power to stay proceedings is incidental to the power inherent in every

court to control the disposition of the cases on its docket with economy of time and effort for itself,

for counsel, and for litigants." *Laser Spa of Rochester, LLC v. Erie Ins. Co.*, No. 20-CV-6308,

2020 WL 5898640, at *1 (W.D.N.Y. Oct. 5, 2020) (quoting *Ligouri v. Wells Fargo Bank, N.A.*,

No. 19-CV-10677, 2020 WL 5370709, at *3 (S.D.N.Y. Sept. 8, 2020)). "In order to promote

judicial economy, if competing cases are filed in two federal courts, 'the general principle is to avoid duplicative litigation.'" *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

In line with this general principle, "the Second Circuit has long followed the 'first-filed rule' in deciding whether a case should be stayed or dismissed in favor of a case pending in another federal court." *Id.* (citing *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). Under this rule, where two actions involve substantially the same issues, the first should have priority "absent the showing of a balance of convenience in favor of the second, or unless there are special circumstances which justify giving priority to the second." *William Gluckin & Co.*, 407 F.2d at 178 (quoting *Remington Prods. Corp. v. American Aerovap, Inc.*, 192 F.2d 872, 872 (2d Cir. 1951)). The purposes of this rule are to "avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." *Regions Bank*, 170 F. Supp. 2d at 439. Ultimately, the decision to stay a proceeding rests within the district court's discretion. *Id.* (quoting *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952))).

G.Skill asserts that the Court should apply the first-filed rule and stay this action pending resolution of the *Hurd* action because both actions involve substantially the same issues, that is, whether the advertisements for G.Skill's computer memory products mislead customers to believe that the memory can achieve advertised speeds "out-of-the-box." ECF No. 9 at 9. Nelson appears to take issue with G.Skill's assertion that the first-filed rule warrants a stay in this case on jurisdictional grounds. That is, he asserts that because the *Hurd* court would not have specific

4

jurisdiction over G.Skill for New York plaintiffs' claims, the rulings in *Hurd* would not have preclusive effect on the issues and claims in this action. ECF No. 11 at 7-8. Nelson also disputes G.Skill's "portrayal of *Hurd* as more advanced" than this action. *Id.* at 8.

The *Hurd* action and the *Nelson* action, both of which involve allegations that G.Skill has violated the consumer protection laws of multiple states by misleading consumers to believe that its memory products run at the advertised speed out-of-the-box are substantially similar, even if the claims do not perfectly overlap. *Readick v. Avis Budget Grp., Inc.*, 2014 WL 1683799, at *2, 5 (S.D.N.Y. Apr. 28, 2014). "Parties and claims need not be identical in order for one action to be stayed . . . in deference to an earlier action." *Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). Although the parties dispute just how much more advanced the *Hurd* action is than the *Nelson* action, there is no dispute that the *Hurd* action was filed first nor that the two actions involve substantially similar issues. Accordingly, absent a balance of convenience in favor of the second, or special circumstances, the *Hurd* action should have priority.

To the extent that Nelson's jurisdictional argument reflects an attempt to establish such a balance of convenience or special circumstances, it is unpersuasive. The Supreme Court has long recognized two types of personal jurisdiction: "general" or "all-purpose" jurisdiction and "specific" or "case-linked" jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citing *Goodyear Dunlop Tire Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a corporation, the "paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home," such as its place of incorporation or principal place of business. *Goodyear*, 564 U.S. at 924. A court with general jurisdiction may "hear *any* claim against the defendant, even if all the incidents underlying the claim occurred in a different State."

*Bristol-Myers Squibb*, 582 U.S. at 262. To exercise specific jurisdiction over an out-of-state defendant, on the other hand, "settled principles" require an "affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State." *Id.* at 264 (quoting *Goodyear*, 564 U.S. at 919). The corporate defendant here, G.Skill, is a California corporation with its principal place of business in California. *See* ECF No. 1 ¶ 30. The *Hurd* court may therefore exercise general personal jurisdiction over G.Skill, and "hear *any* claim against [it], even if all the incidents underlying the claim occurred in a different State," including New York. *Bristol-Myers Squibb*, 582 U.S. at 262.

None of the cases on which Nelson relies undermine this settled principle of personal jurisdiction. Instead, they simply recognize that the requirements of specific jurisdiction, as set out in *Bristol-Myers Squibb*, apply in federal court class actions against foreign corporations. *See e.g.*, *Rivera v. Invitation Homes, Inc.*, No. 18-CV-3158, 2020 WL 8910882, at *3, 8 (N.D. Cal. Oct. 29, 2020) (dismissing non-resident plaintiffs' claims against Maryland corporation with its principal place of business in Texas); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-6391, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) (dismissing non-resident plaintiff's claim against Korean and New York corporations headquartered in Korea and New Jersey respectively); *In re Dental Supplies Antitrust Litig.*, No. 16-CV-696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (dismissing claim against non-resident defendant for lack of specific jurisdiction). In each case, the court only turned to analysis of specific jurisdiction, and the analysis of the defendants' contacts with the forum state that it requires, after concluding that the defendants were not subject to general jurisdiction in the forum state.

But where, as here, the defendant is incorporated or has its principal place of business in the forum state, that analysis is irrelevant, as a forum-state court may exercise general jurisdiction

over out-of-state plaintiffs' claims arising out of the defendant's out-of-state conduct. *Bristol-Myers Squibb*, 582 U.S. at 262; *Goodyear*, 564 U.S. at 919, 924. Therefore, contrary to Nelson's assertion, whether the New York plaintiffs' claims have some nexus with California is immaterial. Because G.Skill is a California corporation with its principal place of business in California, the *Hurd* court can exercise general personal jurisdiction and hear any claims against it. *Id.* Nelson's assertion that some nexus between the New York plaintiffs' claims and California is required for the *Hurd* court to exercise jurisdiction over G.Skill with respect to those claims therefore does not provide a basis for departing from the first-filed rule.

## II.  The *Kappel* Factors

G.Skill asserts that all five of the factors set forth in *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) weigh in favor of granting a stay. ECF No. 9 at 9-12. Nelson does not frame his opposition in terms of the *Kappel* factors. Instead, in addition to his jurisdictional argument, he argues that G.Skill has not established a clear case of hardship and that G.Skill's "portrayal of *Hurd* as more advanced than this action is misleading and false." ECF No. 11 at 8. For the reasons that follow, the Court concludes that a stay is warranted.

The party seeking a stay must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay will work damage" to someone else. *Laser Spa of Rochester*, 2020 WL 5898640, at *2 (quoting *Ligouri*, 2020 WL 5370709, at *3). In deciding whether to grant a stay, courts in this Circuit consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant[]; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel*, 914 F. Supp. at 1058 (citations omitted). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.*

The Court has considered each of the *Kappel* factors and finds that the balance of the factors favors staying this action pending the resolution of the earlier filed *Hurd* action. *See Readick v. Avis Budget Group, Inc.*, No. 12-CIV-3988, 2014 WL 1683799, at *2 (S.D.N.Y. Apr. 28, 2014).

### A. Nelson's Interests

G.Skill asserts that the first factor weighs in favor of granting a stay because a stay will not prejudice Nelson. Specifically, G.Skill argues that, if the *Hurd* court certifies the proposed Nationwide Class, New York Subclass, and Consumer Protection Subclass, that court's rulings will likely have a preclusive effect on the issues and claims in this action because the claims are "essentially identical to those alleged in the *Hurd* action" and Nelson's proposed New York Class and Multi-State Class would be subsumed by the classes in *Hurd*. ECF No. 9 at 8. G.Skill also asserts that, because Nelson is a putative member of the Nationwide Class and New York Subclass, his rights would "be more than adequately represented by the lead plaintiffs and counsel in the *Hurd* action" should the *Hurd* court certify those classes. *Id.* The Court interprets Nelson's jurisdictional argument as contesting these assertions.

"Courts are generally reluctant to stay proceedings out of concern for a plaintiff's right to proceed with [his] case." *Readick*, 2014 WL 1683799, at *3 (quoting *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, No. 05-CV-5155, 2007 WL 674691, at *5 (E.D.N.Y. Feb. 28, 2007)). Here, however, that concern is mitigated by the fact that certification of the Nationwide Class, the New York subclass, and the Consumer Protection Subclass in *Hurd* would "likely circumscribe [Nelson's] ability to prosecute this action." *Id.* Although Nelson contends that the *Hurd* court would not have personal jurisdiction over G.Skill for the New York claims, he does

not appear to contest the similarity of the claims and issues in the *Hurd* action and his own. *See* ECF No. 11 at 7-8.

As explained above, Nelson's jurisdictional argument is unpersuasive. Instead, the Court agrees with G.Skill that, should the *Hurd* court certify the three proposed classes in *Hurd*, its rulings will likely have preclusive effect on the issues and claims in this action because Nelson's claims are "essentially identical" to those alleged in the *Hurd* action. *See* ECF No. 9 at 10. Accordingly, any post-class certification judgment in *Hurd* would likely bind Nelson and most, if not all, members of his proposed classes. *See Readick*, 2014 WL 1683799, at *3 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). "Courts frequently stay the later-filed duplicative lawsuit" in such circumstances. *Id.* (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

Although G.Skill bears the burden of proving that a stay is warranted, it is worth noting that Nelson has not specifically identified any prejudice he or any other putative class member will suffer if the Court grants the stay. "For example, [Nelson] has not argued that his interests will be inadequately represented by the [*Hurd*] class representatives." *Readick*, 2014 WL 1683799, at *4. In the absence of any apparent prejudice to Nelson, the Court concludes that the interests of and potential prejudice to Nelson do not weigh against granting a stay.

### B. G.Skill's Interests

G.Skill asserts that, "[u]nless this case is stayed, [it] will be forced to engage in unnecessarily duplicative discovery in multiple forums at significant expense." ECF No. 9 at 10. Nelson responds by arguing that G.Skill has not identified any hardship sufficient to warrant a stay, specifically noting that litigation costs do not constitute "irreparable harm." ECF No. 11 at

8. Nelson further argues that G.Skill will not be forced to engage in unnecessarily duplicative discovery because the *Hurd* court has stayed merits discovery. *Id.*

Courts in this Circuit have found that this factor weighs in favor of a stay where there are dueling actions arising out of the same nucleus of common facts. *See Finn v. Barney*, 08-CV-2975, 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008). "Permitting [Nelson] to engage in discovery in his action, which clearly arises out of the same nucleus of common facts as the pending class action, would prejudice [G.Skill] through the imposition of premature and potentially duplicative discovery burdens." *Id.* (internal citations and quotation marks omitted). Moreover, "[t]o the extent [*Hurd*] disposes of some or all of [Nelson's] claims, discovery in [this action] will serve little or no purpose." *Readick*, 2014 WL 1683799, at *5 (citing *Finn*, 2008 WL 5215699, at *3).

Further, although the *Hurd* court has stayed merits discovery, permitting Nelson's action to proceed would nevertheless require G.Skill to engage in potentially duplicative litigation regarding, for example, the certification of Nelson's putative New York and Multi-State Classes and the *Hurd* Plaintiffs' New York and Consumer Protection Subclasses. The parties in *Hurd* were only recently required to complete class certification discovery and class certification briefing appears to be underway. ECF No. 9-1 at 70-71. Accordingly, the Court finds that permitting this action to proceed would involve potentially unnecessary duplicative litigation. Because this would prejudice G.Skill, its interests weigh in favor of granting a stay.

Nelson responds that, because litigation costs do not amount to irreparable harm, G.Skill has not established sufficient hardship to warrant a stay. This argument misses the mark. Nelson appears to rely on the Second Circuit's four-factor test for a stay pending appeal, not the *Kappel* factors. *See LaCour v. Colgate-Palmolive Co.*, 2021 WL 35422295, at *1-2 (analyzing irreparable

harm on a motion to stay pending appeal of class certification order pursuant to Fed. R. Civ. P. 23(f)); *see also In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("The four factors to be considered in issuing a *stay pending appeal* are well known: . . . '(2) whether the applicant will be irreparably injured absent a stay.'" (emphasis added)). Irreparable harm is not among the five *Kappel* factors, however, and is not required to establish prejudice. *See Readick*, 2014 WL 1683799, at *5 (duplicative, costly, and potentially unnecessary discovery sufficient to establish prejudice for purposes of *Kappel* analysis). Accordingly, the Court concludes that the likelihood of duplicative litigation is sufficient to establish that G.Skill's interests weigh in favor of granting a stay even if litigation costs alone do not rise to the level of irreparable harm.

### C.  The Courts' Interests

Next, G.Skill asserts that staying this action would permit the Court to avoid "unnecessary duplication of judicial effort and eliminate the risk of inconsistent adjudication." ECF No. 9 at 11. Besides his unpersuasive jurisdictional argument, Nelson does not appear to contest this assertion. *See generally* ECF No. 11.

In analyzing this factor, courts have considered whether staying an action will "serve the interest of the courts by promoting judicial efficiency and 'minimizing the possibility of conflicts between different courts.'" *Readick*, 2014 WL 1683799, at *5 (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009)). This action and the *Hurd* action involve substantially duplicative claims, even if they do not perfectly overlap. The *Hurd* Plaintiffs, in addition to their claims under the consumer protection laws of California and over 40 other states, seek relief under New York General Business Law §§ 349 and 350. Nelson also seeks relief under the same provisions of New York law, along with the

consumer protection laws of 11 other states, most of which are included in the *Hurd* action. Both actions also involve claims of negligent misrepresentation and breach of express warranty.

The resolution of these overlapping claims will require similar proof and legal analysis, making claim preclusion likely. *See Curtis*, 226 F.3d 138 ("Whether there is claim preclusion depends on whether the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit."). The overlapping claims also present the potential for inconsistent adjudications. *See Readick*, 2014 WL 1683799, at *5. Staying this action would therefore promote judicial efficiency and minimize the possibility of conflicts between this Court and the *Hurd* court. Accordingly, this factor weighs in favor of granting a stay.

### D.  Non-Parties' Interests

G.Skill asserts that the interests of non-parties weigh in favor of granting a stay because, if the proposed classes in both this action and the *Hurd* action are certified, absent class members who are not yet parties to either action would likely "be besieged with and confused by duplicate class notices from these two dueling class actions." ECF No. 9 at 11. Nelson does not address this factor. *See generally* ECF No. 11. The Court agrees with G.Skill that the interests of absent class members weigh in favor of a stay. Further, a stay would serve the interests of a broader group of non-parties by "promoting judicial efficiency and 'minimizing the possibility of conflicts between different courts.'" *Hoover v. HSBC Mortgage Corp. (USA)*, No. 13-CV-149, 2014 WL 12781322, at *2 (N.D.N.Y. July 9, 2014) (quoting *N.Y. Power Auth. v. United States*, 42 Fed. Cl. 795, 799 (Fed. Cir. 1999)). Therefore, this factor too weighs in favor of granting a stay.

**E.  The Public Interest**

Finally, G.Skill argues that, because a stay would further the interests of judicial economy, it would also serve the public interest. ECF No. 9 at 12. Nelson has not addressed the public interest factor. *See generally* ECF No. 11. "Considerations of judicial economy are frequently viewed as relevant to the public interest and . . . they weigh against the invest of court resources that may prove to have been unnecessary." *Readick*, 2014 WL 1683799, at *6 (quoting *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11-CIV-1608, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012)). As discussed above, a stay of this action further the interest of judicial economy, and would therefore serve the public interest. Accordingly, this factor weighs in favor of granting a stay.

**CONCLUSION**

For the reasons stated herein, G.Skill's motion to stay this action, ECF No. 9, is GRANTED. The parties shall file a joint status report within 30 days of the class certification decision in *Tristan Hurd v. G. Skill International Enterprise Co., LTD. et al.*, No. 22-CV-00685 (C.D. Cal.) and every 90 days thereafter.

IT IS SO ORDERED.

Dated: May 8, 2023
      Rochester, New York

                                      _____
                                    HON. FRANK P. GERACI, JR.
                                    United States District Judge
                                    Western District of New York